**ROSSETTI CONTRACTING CO., INC., Plaintiff,**

v.

**Peter J. BRENNAN, Secretary of Labor, and Environmental Protection Agency, Defendants,**

and

**John McElwain, President, Board of Trustees, Hinsdale Sanitary District, DuPage County, Defendant,**

and

**Hinsdale Sanitary District, DuPage County, Defendant,**

and

**Loitz Brothers Construction Company, Inc., Intervenor.**

No. 74 C 1934.

United States District Court, N. D. Illinois, E. D.

Oct. 10, 1974.

---

James E. O'Halloran, Jr., of Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty., and M. B. Lowery, Asst. U. S. Atty., Chicago, Ill., for defendants Peter J. Brennan, Secretary of Labor; and the Environmental Protection Agency.

Louis R. Main, of Scofield & Main, Hinsdale, Ill., for defendants John McElwain, President, Board of Trustees, Hinsdale Sanitary District DuPage County; and Hinsdale Sanitary District, DuPage County.

Peter B. Carey and Donald V. O'Brien of O'Brien, Trittipo & Carey, Chicago, Ill., for intervenor, Loitz Brothers Construction Co., Inc.

## FINDINGS OF FACT

### and

## CONCLUSIONS OF LAW

PERRY, Senior District Judge.

This cause came on for hearing upon the complaint of Rossetti Contracting Company, Inc., a corporation, the intervening petition of Loitz Brothers Construction Company, Inc., and the respective pleadings of all of the defendants herein. The case was tried without a jury. The court, having heard the testimony of the witnesses and argument of counsel for the respective parties and having considered all of the evidence adduced herein, hereby makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. On June 7, 1974 plaintiff, Rossetti Contracting Company, Inc. ("Rossetti") was the low bidder on a project entitled Hinsdale Sanitary District Interceptor Sewers, Phase 6. The first low bid was disqualified for failure to meet the terms of the bid and plaintiff became the low bidder with a bid of approximately $2,000,000.

2. While the owner of the project was the Hinsdale Sanitary District, the project was partially funded through the Federal Environmental Protection Agency ("EPA").

3. Since the project was partially federally funded, the bid documents included an Appendix A which set forth

the imposed Chicago Plan as promulgated by the United States Department of Labor pursuant to Executive Order No. 11246.

4. Rossetti filed an executed Appendix A with its bid but through an inadvertent good faith error set forth its goals for minority hiring of operating engineers as 10% for the years 1974 and 1975. The actual required goals for those years were 10.2% for 1974 and 13.9% for 1975.

5. In actuality, of the total man-hours worked by operating engineers from January 1, to June 30, 1974 by Rossetti employees, 10.55% were worked by minority operating engineers. Thus, Rossetti was in actual compliance with the goals for 1974. Also, proof has shown that Rossetti's minority utilization has increased from that time to the date of trial and that at this time Rossetti is approaching the standard set for 1975.

6. After receiving an indication of tentative award from the Hinsdale Sanitary District, Rossetti's bid materials were submitted to the EPA for approval and Rossetti was informed that certain deviations from the goals had been made in the Appendix A submitted by Rossetti.

7. On July 2, 1974 representatives of Rossetti met with representatives of the EPA and, on the same date, Rossetti submitted various materials to the EPA indicating that it was in full compliance with the minority hiring goals of the Chicago Plan and also submitted an amended Appendix A which contained the proper percentage requirements. The Chicago office of the EPA submitted these materials to its Washington office which consulted with the Department of Labor which has primary responsibility for interpretation of the imposed Chicago Plan. On July 10, 1974 Rossetti was informed by the EPA that the Department of Labor had refused to accept the amended Appendix A and that the contract would be awarded to the next low bidder, intervenor defendant Loitz Construction Company. Loitz's bid was approximately $55,000 more than Rossetti's.

8. The Hinsdale Sanitary District project had originally been bid as a single project rather than in separate phases. Thus, on April 22, 1974 Rossetti was part of a joint venture which bid the overall project. Its joint venture partners were Advance Construction Company and Pontarelli Construction Company. Advance Construction had the responsibility for preparation of the bid documents including Appendix A. At that time, Advance inadvertently used 10% rather than 10.2% as the goal for utilization of minority operating engineers for the year 1974. A similar mistake was made for 1975. No officer of Rossetti actually saw the Appendix A submitted by the joint venture of which it was a part and its officers assumed that Appendix A was submitted in the percentages of employment of minorities in accordance with the requirement of the imposed Chicago Plan. The joint venture bid, while low, was over budget and while the bid was considered by the Hinsdale Sanitary District for two to three weeks it was eventually rejected as being over budget. The Village of Hinsdale did not mention to Rossetti that Appendix A was not properly filled out. No Federal agency or other person or entity called the attention of Anthony Rossetti, president of Rossetti Contracting Company, to the error, which was indeed very slight. Mr. Rossetti assumed that an Appendix A had been supplied, in conformity with the goal required under the imposed Chicago Plan, by the joint venture. His action in making such assumption was that of a reasonable and prudent man. Under the circumstances this assumption and his action constituted excusable error, since it did not in any way affect price, quality or quantity of the goods or the service to be performed.

9. When the project was rebid in separate phases a Rossetti employee called Advance to determine how Advance had filled out Appendix A in the

joint venture situation. The president of Rossetti inadvertently assumed, as hereinabove set forth, that the Appendix A submitted to Hinsdale in the joint venture bid was filled out in conformity with the requirement of the imposed Chicago Plan and acting upon such assumption told his office manager to use the same data to fill out the Appendix A for the Rossetti bid for the Hinsdale Sanitary District project. At the time Rossetti and its officers acted in good faith and believed that Rossetti was in compliance with the requirement of the Chicago Plan for minority hiring, even though it was in error. Consequently, the incorrect percentages were filled out in Appendix A in Rossetti's Hinsdale bid. The incorrect percentage was only a slight error of .2 of 1 percent below the required percentage for the year 1974, which error Rossetti immediately sought to correct when it learned of the error. It was purely a minor error that could be and was corrected without damage to any of the parties and in such manner that the object and purpose of the law will be accomplished if the Rossetti Company is awarded the contract.

10. On March 26, 1974 Advance bid a project in Joliet, Illinois also partially funded by the EPA. Appendix A was not included in the original bid documents and on May 10, 1974 Advance, pursuant to a request from the owner, submitted an Appendix A which again carried over the joint venture error and set forth a figure of 10% for the years 1974 and 1975. The error in this Appendix A was noticed by the regional office of the EPA and Mr. Ronald Cornelius of the EPA after consultation with Mr. James Wardlaw of the Department of Labor allowed Advance to submit an amended Appendix A, correcting the percentage errors. The reasons for this decision were that Advance had a good record in the equal employment area, that the error was only .2 of 1% and that Advance's bid was $500,000 lower than the next bid. It was also noted by both Mr. Cornelius and Mr. Wardlaw at the time the decision was made that they were under the impression that Advance's Appendix A had been in the original bid documents and had been submitted at the time of the bid.

11. On March 26, 1974, Mole Construction Company submitted a bid to the Metropolitan Sanitary District of Greater Chicago for another project partially funded by the EPA. The bid documents contained the former voluntary Chicago Plan but not the new Imposed Plan. Mole Construction Company was the apparent low bidder, and was permitted to submit an Appendix A after the bid opening. The Appendix A submitted by Mole, however, was executed in blank with none of the percentages filled in. Upon discovery of that mistake and upon receipt of the Sanitary District counsel's opinion that such minor errors could be waived, the EPA allowed Mole to submit a second amended Appendix A which was properly completed. On September 26, 1974, Mole was formally awarded the contract.

12. In various other instances involving projects partially funded by EPA in which Appendix A was not included in the original bid documents, the low bidders were allowed to submit Appendix A after bid opening. This occurred at least on three occasions in which the North Shore Sanitary District was the owner and the successful bidders were Pontarelli Construction (contract F-6B), Santucci Construction (contract S-10B) and Jenkins and Boller (contract P-11JA). The decision to allow the late submittal despite the language of the imposed Chicago Plan which requires submittal of Appendix A at or prior to the time of bid, was made by Mr. Roland Cornelius of the regional office of EPA with the concurrence of the EPA office in Washington. Such action was justified on the grounds that, since the contractors had no notice of the Plan, it would be obviously inequitable to disqualify them for not submitting Appendix A with their bid. Also, Mr. Wardlaw testified that, while he was not involved in the decision making with regard to the above late submittals, the

Department of Labor had in fact adopted a policy which would allow late submittals in those cases.

13. In the cases in which post-bid submittals of Appendix A were allowed and in the Advance and Mole situations, in which amendments to Appendix A were allowed, neither the EPA nor the Department of Labor made any investigation or inquiry to determine whether or not the contractors involved were in compliance with minority hiring goals or had effective minority hiring programs.

14. All parties have acknowledged that both Rossetti and the second bidder are competent contractors who can responsibly perform the work in question and that the only issue involves compliance with the imposed Chicago Plan.

*Conclusions of Law*

A. Executive Order 11246 delegates to the Secretary of Labor the primary responsibility for insuring equal employment opportunity in the programs operated or financed by the federal government. Pursuant to that authority, the Secretary promulgated the imposed Chicago Plan on December 27, 1973. The imposed Chicago Plan required in relevant part that, after its effective date:

(a) No contracts or subcontracts shall be awarded for Federal and Federally-assisted construction in the Chicago Illinois SMSA on projects whose estimated cost exceeds $500,000 unless the bidder completes and submits, prior to bid opening, the document identified as Appendix A, notice of requirement for submission of affirmative action plan to insure equal employment opportunity or a substantially similar document, which shall include specific goals of minority manpower utilization for each trade designated therein which will be used by the contractor on all of his work (both Federal and nonfederal) within the Chicago SMSA during the term of his performance of the contract, such goals to be established by the contrac-

tor at least within the ranges set forth in Appendix A.

B. Both the law of Illinois (which may affect the obligations of the Hinsdale Sanitary District) and federal law as set forth in 41 C.F.R. 1–2.405 permit the waiver of minor irregularities and/or the correction of bid defects which do not go to the price, quantity or quality of the goods or service to be performed pursuant to a sealed bid.

■ C. The goal of the Chicago Plan is very clearly to promote minority hiring in skilled construction trades in the greater Chicago area. The Plan, as with any law or regulation, should be interpreted in such a manner as to promote and give effect to its declared purpose.

■ D. The error in Rossetti's Appendix A was an inadvertent error made in good faith, which error Rossetti offered to correct. It was a minor error that in no way could affect the amount of the bid or the quality or quantity of material, labor or service to be furnished under said bid and it was the same kind of minor error that other bidders, as found herein in the foregoing Findings of Fact, had been permitted to correct and were thereafter awarded contracts. To allow Rossetti to file an amended Appendix A in compliance with the law will benefit the taxpayers by $55,000.00 and will carry out the very purposes intended by the law involved.

E. While the imposed Chicago Plan states absolutely that an executed Appendix A must be submitted at or prior to the time of the bid, the Plan does not speak to the question of amendment of the type of error which appears in the Appendix A submitted as part of Rossetti's bid in this case.

F. No useful purpose whatsoever would be served by disqualifying Rossetti on the basis of the inadvertent error when Rossetti has proven that its minority hiring practices exceed the goals of the Plan. Neither the purposes of the statute nor the interests of the taxpayers

or the federal government would be served by awarding the bid to a second bidder whose price is approximately $55,000 higher when Rossetti is in fact in compliance with goals of the Plan.

G. To disqualify Rossetti under the facts of this case would be contrary to logic and the equities of the situation and would constitute the ultimate example of bureaucratic forms prevailing over substance and fact.

H. The arguments of the Department of Labor and the EPA that no authority exists to exercise discretion and allow the amendment of Appendix A are without basis in the law and are clearly contradicted by the repeated exercise of discretion in allowing submittals of Appendix A after bid opening and amendments of Appendix A in certain situations to avoid inequities.

I. The case of Northeast Construction Co. v. Romney, 157 U.S.App.D.C. 381, 485 F.2d 752 (1973), cited by defendants is not controlling since, in that case, the low bidder did not include any percentages for minority hiring and the issue of good faith bidding was involved. In the case at bar, percentages were supplied (albeit erroneously) and Rossetti's good faith and actual compliance with minority hiring goals have been established. Rossetti seeks only to bring the typed percentages in Appendix A into conformity with the facts as established.

J. Plaintiff, Rossetti Contracting Company, Inc., is entitled to the relief sought and to an order and decree providing that the Department of Labor and the EPA accept the amended Appendix A' submitted by Rossetti and that the Hinsdale Sanitary District award the contract in question to Rossetti without further delay.

## ORDER and DECREE

This cause came on for trial before the court without a jury, and the court having heard testimony presented by the parties and argument of counsel, having considered the record and exhibits herein, and having this day entered simultaneously herewith its Findings of Fact and Conclusions of Law herein, in accordance therewith

It is ordered, adjudged and decreed:

1. That defendant, the Hinsdale Sanitary District, be and it is hereby permanently enjoined from awarding the contract for the construction of Hinsdale Sanitary District Interceptor Sewers, Phase 6, to other than plaintiff, Rossetti Contracting Company, Inc., and from accepting the bid of and awarding said contract to Loitz Brothers Construction Company, Inc., intervenor herein.

2. That plaintiff, Rossetti Contracting Company, Inc., is in compliance with the imposed Chicago Plan and its goals.

3. That defendants, Peter J. Brennan, Secretary of Labor, and the Environmental Protection Agency be and they are hereby ordered to accept the corrected Appendix A on the imposed Chicago Plan submitted by plaintiff, Rossetti Contracting Company, Inc., on July 2, 1974, and the Department of Labor and said agency shall inform the Hinsdale Sanitary District that said Appendix A has been accepted.

4. Rossetti Contracting Company, Inc. shall have no right to damages against any party hereto for delay to date in the awarding the aforesaid contract.

5. Rossetti Contracting Company, Inc. is the responsive, responsible low bidder on the aforesaid contract and is entitled to an award of said contract by the Hinsdale Sanitary District without further delay and said District is ordered to award the contract for the construction of Hinsdale Sanitary District Interceptor Sewers, Phase 6, to Rossetti Contracting Company, Inc.

6. That this Order and Decree should be implemented immediately and the parties hereto shall take the actions ordered herein without further delay in order to avoid damages arising out of any such delay.